**J.L. DAVIS, individually and d/b/a J.L. Davis–Claytonville Gas Plant, Appellant,**

v.

**HYDPRO, INC., HydPro Pipeline, Inc., and Energy Affiliates, Ltd., Appellees.**

**No. 11–91–194–CV.**

Court of Appeals of Texas, Eastland.

Oct. 1, 1992.

Opinion on Rehearing Oct. 22, 1992.

Rehearing Overruled Nov. 19, 1992.

C. Medferd Owen, Jr., Eric L. Lindstrom, Russell Neisig, Bullock, Scott, Neisig & Owens, Midland, L. Wayne Scott, San Antonio, for appellant.

R. Temple Dickson, Moore, Dickson, Roberts & Ratliff Inc., Sweetwater, Michael Puryear, Donald M. Hunt, Gary M. Bellair, Carr, Evans, Fouts & Hunt, Lubbock, for appellees.

## OPINION

DICKENSON, Justice.

The jury found that defendant[1] tortiously interfered with plaintiffs'[2] contractual relationship with a third party,[3] and the trial court rendered judgment on the jury's verdict that plaintiffs recover the sum of $1,000,000 plus prejudgment interest at the rate of 10 percent per annum, compounded daily, from March 20, 1987, until June 20, 1991, and post-judgment interest at the rate of 10 percent per annum, compounded annually. Defendant appeals. We reverse and render.

### The Jury's Verdict

The questions to the jury and the jury's answers to those questions are quoted in pertinent part as shown:

■ Do you find from a preponderance of the evidence that on March 20, 1987, a contract existed between Plaintiffs and McDonald Production, Inc.?

Gas Processing Agreement __Yes__

Gas Purchase Agreement __Yes__

■ Do you find from a preponderance of the evidence that Defendant knew, or in the exercise of ordinary care should have known, of a contract between Plaintiffs and McDonald Production, Inc.? __We do__

■ Do you find from a preponderance of the evidence that Defendant interfered with a contract between Plaintiffs and McDonald Production, Inc.?[4] __We do__

■ Do you find from a preponderance of the evidence that Defendant's interference was willful and intentional? __We do__

■ What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate Plaintiffs for damages, if any, proximately caused by Defendant's interference?[5] __1,000,000__

1. Defendant is J.L. Davis, Individually and doing business as J.L. Davis–Claytonville Gas Plant.

2. Plaintiffs are HydPro, Inc., HydPro Pipeline, Inc., and Energy Affiliates, Inc. (in its own behalf and as general partner of Energy Affiliates, Ltd., a limited partnership).

3. McDonald Production, Inc. is the third party. Plaintiffs settled their claims for breach of contract, and the third party is not a party to this appeal.

4. In connection with this question, the jury was instructed:

You are instructed that "interference" includes not only actual inducement or procurement of a breach of contract, but all invasions of contractual relations, including any act which retards, makes more difficult or prevents performance.

5. The jury was instructed that it could consider the following elements of damages:

(a) Plaintiffs' loss of income from the time that Defendant interfered with the contract until the present date;

(b) Plaintiffs' loss of income which, in reasonable probability, Plaintiffs will lose in the future; and

■ Do you find from a preponderance of the evidence that the interference by Defendant was done with actual malice?
  We do not
■ The punitive damage question was not answered pursuant to the court's instruction not to answer it unless the answer to Question 6 was "We do."

### Points of Error

Defendant presents five points of error in which he argues that the trial court erred: (Point One) in entering judgment for HydPro [6] because there is no evidence [or alternatively the evidence is factually insufficient] to support the jury's answers to Questions 3 and 4; (Point Two) in overruling his objection to the instruction accompanying Question 3 [see Footnote 4]; (Point Three) in entering judgment for HydPro [7] because there is no evidence [or alternatively factually insufficient evidence] to support the jury's answer to Question 5; (Point Four) in overruling his objections to Question 5 because, inter alia, it set forth an improper measure of damages; and (Point Five) in entering judgment for prejudgment interest because the jury did not segregate past and future damages. We sustain the first and third points of error, and the other points become moot and need not be discussed.

### Undisputed Facts

The undisputed facts show that McDonald Production, Inc. breached its agreements with plaintiffs on March 20, 1987, and there is no proof of any contractual interference by defendant prior to that date.

While the jury was free to reject the proof that defendant and his employees had no contact with McDonald before March 20, the jury was not free to find that

(c) Plaintiffs' reasonable costs and expenses in performing under the McDonald contract, including cost of building and maintaining the pipeline and processing plant.

6. He also argues that the trial court erred in overruling his motion for directed verdict, his objections to the charge, his amended motion for judgment non obstante veredicto, and his

defendant's conduct after the breach was willful and intentional interference which proximately caused plaintiffs' damages.

### Tortious Interference

The Supreme Court stated in *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660 at 664 (Tex.1990), and again in *Victoria Bank & Trust Company v. Brady*, 811 S.W.2d 931 at 939 (Tex.1991), that the elements of a cause of action for contractual interference in Texas are:

(1) the existence of a contract subject to interference[;] (2) the act of interference was willful and intentional[;] (3) *such intentional act was a proximate cause of plaintiff's damage*[;] and (4) actual damage or loss occurred. (Emphasis added)

*Juliette Fowler* and *Victoria Bank* did not overrule the holding in *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768 at 803 (Tex. App.–Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988), that:

A necessary element of the plaintiff's cause of action is a showing that the defendant *took an active part in persuading a party to a contract to breach it.* Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach. It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise. (Emphasis added; Citations omitted)

Reading *Juliette Fowler* and *Victoria Bank* in harmony with *Texaco, Inc. v. Pennzoil Co., supra*, convinces us that the "active part in persuading a party to a contract to breach it" is a part of the proximate cause requirement stated in *Juliette Fowler* and *Victoria Bank*. Since

amended motion for new trial for the same reasons shown under this point.

7. He also argues that the trial court erred in overruling his motion for directed verdict, his objections to the charge, his amended motion for judgment non obstante veredicto, and his amended motion for new trial for the same reasons shown under this point.

there is no proof that the defendant in this case, or any of his employees, had any negotiations with McDonald after its contract with plaintiffs until after McDonald's breach of that contract, the trial court should have granted defendant's motion for judgment non obstante veredicto. See *Texaco, Inc. v. Pennzoil Co.,* supra, and *Arabesque Studios, Inc. v. Academy of Fine Arts International, Inc.,* 529 S.W.2d 564 at 568 (Tex.Civ.App.–Dallas 1975, no writ), which held that plaintiff must show that defendant "knowingly induced" the breach and that it is not enough to show that defendant "reaped the advantages of a broken contract." See also RESTATEMENT (SECOND) OF TORTS § 766 cmt. n[8] and Annot., 26 A.L.R.2d 1227 (1952).

### This Court's Ruling

The judgment of the trial court is reversed; this court renders judgment that plaintiffs take nothing from defendant on their claims that he tortiously interfered with their contractual relationship with McDonald Production, Inc.

Reversed and rendered.

### ON REHEARING

This court sustained appellant's third point of error because the $1,000,000 in damages (which the jury found in answer to Question 5) were caused by McDonald Production, Inc. when it breached its contract with plaintiffs.[1] There is no evidence that the subsequent negotiations which defendant had with McDonald Production, Inc. caused that party to breach its contract with plaintiffs.[2]

The motion for rehearing is overruled.

---

**8.** Comment "n" discusses the situation before us, where a party makes a contract with knowledge that the other party has breached its contract with a third person. The comment states:

> One does not induce another to commit a breach of contract with a third person under the rule stated in this Section [Section 766] when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.

**1.** As noted in Footnote 3 to the original opinion, plaintiffs settled their claims against the party that breached the contract.

**2.** To hold otherwise would put at risk any third party who had dealings with a contracting party after it repudiated its contract. If the third party did not cause the breach, it cannot be held liable for the damages.